IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

Case No. 1:20-cr-154 (LO)

JOHN CAMERON DENTON,
   a/k/a "Rape"
   a/k/a "Death"
   a/k/a "Tormentor"

Defendant.



## STATEMENT OF FACTS

The United States and the Defendant, JOHN CAMERON DENTON (hereinafter "the Defendant") agree that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt:

    1.    At all times relevant to the criminal information, the Defendant resided in Texas.

    2.    Beginning in and around October 2018 and continuing until in and around April 2019, in the Eastern District of Virginia and elsewhere, the Defendant did knowingly and unlawfully combine, conspire, confederate, and agree with John William Kirby Kelley and other uncharged co-conspirators including, but not limited to, two foreign nationals (hereinafter "Co-Conspirator 1" and "Co-Conspirator 2") and a juvenile ("Co-Conspirator 3"), to transmit in interstate and foreign commerce any communication containing any threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c), all in violation of Title 18, United States Code, Section 371.

3.  In and around 2018, Kelley began hosting the #Graveyard IRC Channel on the Clearnet, which refers to the traditional World Wide Web that is accessible through Google, another search engine, and by typing in the domain. Kelley used the moniker "carl" when in the IRC channel.

4.  In and around 2018, Kelley, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 began using the #Graveyard IRC Channel.

5.  In and around October 2018, the Defendant began accessing the #Graveyard IRC Channel. The Defendant used the moniker "Rape" when in the IRC channel.

6.  During the course of the conspiracy, the Defendant, Kelley, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and other co-conspirators coordinated swatting calls in the #Graveyard IRC Channel and other channels or through private messages.

7.  Co-Conspirator 1 and 2 were the most prolific swatters. Co-Conspirator 1 often asked other co-conspirators in the #Graveyard IRC Channel to propose swatting targets. Co-Conspirator 1 and 2 then chose from the options presented to them by the co-conspirators. Once Co-Conspirator 1 and 2 chose a target, the co-conspirators often used the Mumble application to listen to the swatting call in real time. Mumble is an open source Voice over Internet Protocol ("VoIP") communication tool that permits users to speak with and listen to each other.

8.  The co-conspirators used VoIP technology when placing swatting calls to law enforcement. The co-conspirators used VoIP technology because it helped conceal the co-conspirators' true identity. The VoIP calls were made using Google Voice services associated with email accounts kaseybaby99.s@gmail.com, jhulxo1000@gmail.com, and other email addresses. In setting up these accounts, the co-conspirators used information not readily attributable to the co-conspirators. Google logged the calls placed by many of the accounts used for swatting calls. The accounts required an email and password to access the accounts, which

limited who could use the accounts. The co-conspirators also used voice changers to disguise their real voices.

9. The co-conspirators chose targets for different reasons. For instance, some co-conspirators proposed swatting individuals who were live streaming their activities. Some co-conspirators chose these individuals because they wanted to watch the law enforcement response to the threatening phone calls. Some co-conspirators also chose targets because they were motivated by racial animus.

10. In particular, the Defendant, Co-Conspirator 2, and Co-Conspirator 3 expressed white supremacist views. The Defendant communicated with these individuals about his white supremacist views and used racial epithets. Both Co-Conspirator 2 and 3 chose targets based on their white supremacist views. And, as further explained below, the Defendant chose to target an individual and a news organization because they exposed his real identity and participation in Atomwaffen Division, which is a white supremacist organization that is present across the United States and in some other countries.

11. On or about November 3, 2018, Co-Conspirator 3 chose the Alfred Street Baptist Church, which is located in Alexandria, Virginia, within the Eastern District of Virginia, as a location to swat. Co-Conspirator 3 chose this church because it was predominantly African American.

12. On or about November 3, 2018, at least one co-conspirator called law enforcement in the City of Alexandria and stated that he placed pipe bombs at the Alfred Street Baptist Church and that he was going to "blow it up."

13. In response to this swatting call, the Alexandria Police Department ("APD") responded to the Alfred Street Baptist Church and set up a perimeter, evacuated its occupants,

and used K9 units to sweep the interior and exterior of the building. The explosive sweep produced negative results and the APD cleared the scene.

14. On or about November 4, 2018, Kelley asked Co-Conspirator 1 to swat Old Dominion University, which Kelley was then attending. Old Dominion University is located in Norfolk, Virginia, within the Eastern District of Virginia.

15. On or about November 6, 2018, Kelley again reminded co-conspirators that he wanted to swat Old Dominion University because he did not want to attend class.

16. Then, on or about November 29, 2018, at least one co-conspirator called law enforcement at Old Dominion University and claimed that they were armed with an AR-15 rifle and had placed multiple pipe bombs within buildings located on the Old Dominion University campus.

17. In response to the swatting call, Old Dominion University Police Department ("ODUPD") called in every law enforcement officer in the department. ODUPD contacted the Virginia State Police and the Norfolk Police Department to use their K9 officers. The Norfolk Police Department SWAT Team was put on standby to assist with the response to the threat. Old Dominion University closed and professors were not permitted to return to the school. Old Dominion University issued a shelter in place for the students on campus and students were not permitted to leave their dorms except to visit the dining facilities. Law enforcement subsequently searched and cleared every building on the Old Dominion University campus.

18. On or about December 4, 2018, at least one co-conspirator called law enforcement at Old Dominion University and claimed that they were located in Webb Center, which is located on campus. A co-conspirator stated that he possessed a firearm and intended to shoot everyone in Webb Center.

19. In response to this swatting call, ODUPD directed all on duty officers to the

Webb Center. The officers then cleared the building. A thorough search of the building confirmed that there were no threats.

20. After Kelley informed his co-conspirators that law enforcement spoke to him, the Defendant expressed concern about drawing the interest of law enforcement to the conspiracy. Around this time, one of the conspirators moved the #Graveyard IRC Channel to the Onion Router, also known as "Tor," which is an open-source publicly available software that enables anonymous activity on the internet. TOR operates on the part of the internet that cannot be accessed using traditional internet browsers. This area of the internet is sometimes called the "dark web" or "dark net."

21. On or about December 14, 2018, Denton participated in a call made to law enforcement in New York City. During this swatting call, a co-conspirator provided a name and stated that he was affiliated with Atomwaffen Division. The co-conspirator stated that he was located at ProPublica's office in New York City. The co-conspirator further claimed that he had multiple pipe bombs, an AR 15 rifle, one hostage, and a dead body. The co-conspirator stated that he would begin shooting at police when they arrived.

22. In response to this swatting call, the City of New York Police Department ("NYPD") responded to ProPublica's office with approximately a dozen officers. The initial responding officers determined that the threat did not appear credible. As a result, the NYPD chose to limit its response to the initial responding officers. NYPD officers cleared the 13th floor, which is where the purported threat was located. During the operation, the NYPD found a single employee in the office. This employee was visibly shaken by the threat and police response. ProPublica is a publishing company that had conducted investigative reporting on Atomwaffen Division.

23. On or about January 27, 2019, at least one co-conspirator called law enforcement in the City of Alexandria and provided an address that belonged to a United States Cabinet member and United States Secret Service ("USSS") protectee. The co-conspirator stated that he had an AR-15 rifle, shot and killed his girlfriend, had her two children tied up in the laundry room and that he would kill them if he did not speak to a hostage negotiator, and that he had a pipe bomb that he would detonate.

24. In response to this swatting call, the APD contacted the USSS, who informed the APD that these events had not taken place and that there was no need to respond to the Cabinet official's home.

25. On or about February 8, 2019, Denton, Co-Conspirator 2, and Co-Conspirator 3 participated in a call to law enforcement located in Richmond, California. Co-Conspirator 2 claimed to be a journalist (the "Victim") with ProPublica, and further stated that he shot his wife, he would shoot any law enforcement officers who responded to the residence, and threatened to kill himself.

26. In response to this swatting call, law enforcement responded to the Victim's home. Law enforcement removed both the Victim and his wife from their home and placed them in separate police cruisers. Law enforcement permitted the Victim's young son and another relative to remain in the home. The Victim explained that he had been receiving threats because he was a journalist and had written about white supremacists. Law enforcement released the Victim and his wife and let them reenter their home. The Victim and his family were shaken by these events.

27. From in and around October 2018, the conspirators maintained a dark net site known as DoxBin. The site was a repository of the personally identifiable information of potential and past swatting targets. The conspirators indicated on DoxBin that an individual had

been swatted by placing a gun symbol next to the name of the person swatted. The DoxBin website primarily targeted government officials, executives, journalists, and celebrities. The Defendant took part in doxxing individuals.

28. The acts taken by the Defendant in furtherance of the offense charged in this case, including the acts described above, were in all respects willful, knowing, and deliberate, and were not committed by mistake, accident, or other innocent reason.

29. This statement of facts includes those facts necessary to support the plea agreement between the Defendant and the United States. The Defendant acknowledges that the foregoing facts do not describe all of the Defendant's conduct relating to the offense charged in this case nor do they identify all of the persons with whom the Defendant may have engaged in illegal activities.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Carina A. Cuellar
Assistant United States Attorney

Defendant's Signature: After consulting with my attorney and pursuant to the plea agreement entered into this day between the Defendant, John Cameron Denton, and the United States, I hereby stipulate that the above statement of facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 7/14/20

John Cameron Denton
Defendant

Defense Counsel Signature: I am counsel for the Defendant in this case. I have carefully reviewed the above statement of facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 7/14/20

Andrew M. Stewart
Counsels for the Defendant

8